**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CELIA PEREZ TORRES,<br><br>                    Plaintiff,<br>       vs.<br><br>DAIVD RISLEY,<br><br>                    Defendant.<br>_____<br>DAVID RISLEY,<br><br>                    Third-Party Plaintiff,<br>       vs.<br><br>DTG LAS VEGAS, LLC dba DOWNTOWN GRAND HOTEL AND CASINO,<br><br>                    Third-Party Defendant. | Case No.: 2:24-cv-01881-GMN-EJY<br><br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 32), filed by Defendant David Risley.  Plaintiff Celia Perez Torres filed a Response, (ECF No. 35), and Risley did not file a Reply.  Further pending before the Court is the Motion for Summary Judgment, (ECF No. 38), filed by Third-Party Defendant DTG Las Vegas, LLC dba Downtown Grand Hotel and Casino ("DGHC").  Third-Party Plaintiff David Risley filed a Response, (ECF No. 48), to which DGHC filed a Reply, (ECF No. 53).

For the reasons discussed below, the Court DENIES Risley's Motion for Summary Judgment, and GRANTS DGHC's Motion for Summary Judgment.

///

///

Page 1 of 15

## I.    <u>BACKGROUND</u>

This case arises from an alleged dog bite incident that occurred at the Downtown Grand Hotel and Casino in May 2023.  On May 23, 2023, Risley called the DGHC to book a room until May 25, 2023, and informed the DGHC that he would be bringing his dog, Max, with him for the duration of the stay. (Risley Dep. 51:9–14, Ex. 1 to Plaintiff's Resp., ECF No. 35-1). Risley thereafter paid the DGHC a fee to keep Max in his hotel room and informed the DGHC front desk that Max would be staying with him. (*Id.* 18:2–9, 54:4–55:24).

Upon checking into the DGHC, Risley signed a Registration Card which stated, among other things, that (1) "[h]ousekeeping will not clean your room if your dog(s) is left in your room unattended," (2) "[n]oise disturbances due to lack of dog supervision may result in an additional fee of $350," and (3) "[g]uests are responsible for any and all damages caused by your dog(s) during your stay."  (Registration Card at 2, Ex. E to DGHC Mot. Summ. J., ECF No. 38-5).

On May 25, 2023, Risley called the front desk of the DGHC and requested to move his checkout time from 11 AM to 12 PM, which the DGHC granted. (Risley Answer to Interrogatories 2:3–4, Ex. B to Risley Mot. Summ. J., ECF No. 32).  Thereafter, around 11 AM on the same day, Risley left Max in his hotel room, went to the DGHC's casino, and confirmed with the front desk staff that his checkout time had been moved to 12 PM. (*Id.* 2:2–6); (Risley Dep. 73:22–74:7, Ex. 1 to Plaintiff's Resp.).  Risley states that when he left his room, he placed a "do not enter" sign on the door and locked it. (*Id.* 2:2–3).

While Risley was in the DGHC casino, Plaintiff Celia Perez Torres, who was working as a housekeeper for DGHC, attempted to enter Risley's room to clean it. (Plaintiff's Resp. 2:4–7, 5:5–13, ECF No. 35).  Plaintiff maintains that she does not remember whether there was a "do not enter" sign affixed to the door of Risley's room. (Torres Dep. 106:6-16, Ex. 2 to Plaintiff's Resp., ECF No. 35-2).  Upon opening the door, Plaintiff was bitten by Max. (Plaintiff's Resp.

2:5–7); (Risley Answer to Interrogatories 2:6–9, Ex. B to Risley Mot. Summ. J.). Plaintiff thereafter filed a Worker's Compensation Claim for the injuries she sustained in the incident and received benefits under claim number WC617-A37216. (Buska Aff. ¶ 8, Ex. A to DGHC Mot. Summ. J., ECF No. 38-1).

Plaintiff subsequently filed this action against Risley in the Eighth Judicial District Court for Clark County, Nevada, asserting a claim for negligence. (*See generally* Compl., Ex. 1 to Pet. Removal, ECF No. 1-1). Risley then removed the action to this Court. (Pet. Removal, ECF No. 1). He thereafter filed a Third-Party Complaint ("TPC"), (ECF No. 23), asserting claims for contribution and equitable indemnity against Third-Party Defendant DGHC. (TPC ¶¶ 27–32, ECF No. 23). Risley now moves for summary judgment on Plaintiff's claims against him, and DGHC moves for summary judgment on Risley's claims against it. (*See generally* Risley Mot. Summ. J., ECF No. 32); (*see* DGHC Mot. Summ. J., ECF No. 38).

## II.    **LEGAL STANDARD**

The Federal Rules of Civil Procedure ("FRCP") provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible

discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

Under Nevada law, the interpretation of an insurance policy is a question of law for the court. *Starr Surplus Lines Ins. Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 535 P.3d 254, 260 (Nev. 2023) (en banc). "The purpose of contract interpretation is to determine the parties' intent when they entered into the contract." *Century Sur. Co. v. Casino West, Inc.*, 329 P.3d 614, 616 (2014) (en banc). A court interprets the policy language "from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Id.* And a court views "the policy as a whole to give reasonable and harmonious meaning to the entire policy. *Id.* If the policy's language is unambiguous, the court "interpret[s] it according to the plain meaning of its terms. *Id.* A policy is considered ambiguous if "it creates multiple reasonable expectations of coverage as drafted." *Id.* (cleaned up). "[I]f an insurance policy has any ambiguous terms, [a] court will interpret the policy to

effectuate the insured's reasonable expectations." *Id.*

## III. <u>DISCUSSION</u>

The Court first addresses Risley's Motion for Summary Judgment before turning to DGHC's Motion for Summary Judgment.

### A. Risley's Motion for Summary Judgment

Risley moves for summary judgment on all claims asserted against him by Torres. In his Motion, Risley addresses two claims asserted by Torres: (1) negligence per se under Nevada Revised Statute ("NRS") 202.500, and (2) negligence. (*See generally* Risley Mot. Summ. J.). However, under Nevada law, negligence per se is "not a separate cause of action, but rather a method of establishing the duty and breach elements of a negligence claim." *Munda v. Summerlin Life & Health Ins. Co.*, 267 P.3d 771, 773 n. 3 (Nev. 2011) (citing *Cervantes v. Health Plan of Nevada, Inc.*, 263 P.3d 261, 264 n. 4 (Nev. 2011)). Indeed, Plaintiff's Complaint lists only a single cause of action for negligence. (*See* Compl. ¶¶ 10–17, Ex. 1 to Pet. Removal). Thus, the Court construes Risley's Motion as seeking summary judgment on Plaintiff's claim for negligence.

To prevail on a negligence claim in Nevada, "a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). "Whether a defendant owes a plaintiff a duty of care is a question of law." *Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 930 (Nev. 1996). The existence of a duty is "a question of law to be determined solely by the courts." *Turner v. Mandalay Sports Ent., LLC*, 180 P.3d 1172, 1177 (Nev. 2008). Breach and proximate cause, however, are generally questions of fact. *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012). Similarly, liability under a negligence per se theory is "in general a question of fact for the jury." *Anderson v. Baltrusaitis*, 944 P.2d 797, 799 (Nev. 1997).

Plaintiff alleges that Defendant Risley owed her a duty of care to properly control and restrain Max in a reasonable manner, and that Defendant Risley breached that duty by leaving Max alone in his hotel room. (Compl. ¶¶ 10–11, Ex. 1 to Pet. Removal).  Plaintiff also asserts a separate theory of negligence, alleging that Defendant Risley was negligent per se because he breached NRS 202.500. (*Id.* ¶¶ 13–17).  The Court first addresses Plaintiff's negligence per se theory before turning to her general negligence theory.

### 1.  Negligence Per Se Under NRS 202.500

Under NRS 202.500(4), a person who knowingly (a) owns or keeps a vicious dog, for more than 7 days after the person has actual notice that the dog is vicious; or (b) transfers ownership of a vicious dog after the person has actual notice that the dog is vicious, is guilty of a misdemeanor. Nev. Rev. Stat. 202.500(4).  Further, "[i]f substantial bodily harm results from an attack by a dog known to be vicious, its owner or keeper is guilty of a category D felony." Nev. Rev. Stat. 202.500(5).  The statute defines a "vicious dog" as one that (1) without being provoked, kills or inflicts substantial bodily harm upon a human being, or (2) has been designated as "dangerous" by a law enforcement agency. Nev. Rev. Stat. 202.500(1)(c). Further, the statute defines a "dangerous dog" as one that, without provocation and on two separate incidents within 18 months, behaves menacingly, "to a degree that would lead a reasonable person to defend himself against substantial bodily harm," when the dog was (1) off the premises of its owner or keeper, or (2) not confined in a cage, pen, or vehicle. Nev. Rev. Stat. 202.500(1)(a)(2)(I)–(II).

Risley argues that the record is devoid of any evidence establishing that Max was either statutorily dangerous or vicious.  First, Risley argues that only *one* incident involving Max had occurred prior to Plaintiff's injury. (Risley Mot. Summ. J. 6:4–7:27).  Risley got Max around 2018, and sometime in 2020, while Risley was away, he received a call from his roommate who told him that Max had bitten a guest at their home. (Risley Dep. 79:17–19, 80:9–83:2, Ex. 1 to

Plaintiff's Resp.).  Risley also argues that even that incident could not be considered by the Court because his testimony regarding the incident is inadmissible hearsay. (Risley Mot. Summ. J. 6:10–17).  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr*, 285 F.3d at 773.  Here, Risley testified in his deposition that his roommate called him and said that a guest at their home had been bitten by Max. (Risley Dep. 82:19–25, Ex. 1 to Plaintiff's Resp.).  While this statement is hearsay-within-hearsay, both layers of hearsay fall within an exception. Fed. R. Evid. 805.  First, as Torres points out, the out-of-court statement made by Risley's roommate is admissible to show Risley's notice of the incident involving Max; it is not offered for the truth of the matter asserted, i.e., that Max bit a guest in Risley's home, but rather to show that Risley had notice of Max's dangerous propensity. (Torres Resp. 4:3–12).  Second, Risley's retelling of the incident in his deposition is admissible as the statement of an opposing party. Fed. R. Evid. 801(d)(2)(A).  Thus, the statement is admissible and can be considered by the Court here.

Because this is the only prior incident involving Max, Risley argues that Max cannot be characterized as statutorily dangerous because NRS 202.500(1)(a)(2) requires *two* instances of menacing behavior within an 18-month period. (*Id.*).  Second, Risley argues that there is no evidence establishing that Max inflicted substantial bodily harm on any person before the incident which gave rise to this case, thus foreclosing a finding that Max was statutorily vicious. (*Id.*).  Based on these assertions, the Court finds that Risley meets his initial burden of negating an essential element of Plaintiff's negligence per se theory.

The Court now turns to whether Torres meets her burden.  With respect to her negligence per se theory, Torres fails to generate a genuine dispute of material fact.  She argues only that "the subject incident" establishes that Max is statutorily vicious, as Max inflicted substantially bodily harm on Torres without being provoked. (Torres Resp. 3:23–26).  However, this conflicts with how Nevada state courts have interpreted NRS 202.500.  In

*Murphy v. Beasley*, a dog bite case, the court construed NRS 202.500 as concerned with an owner's "notice of the animal's propensities to act in a certain manner *prior to* the imposition of any liability." No. A-20-825803-C, 2023 WL 4315335, at \*3 (Nev. Dist. Ct. Apr. 12, 2023) (emphasis added). Indeed, while finding that the dog there did attack and bite the plaintiff, the court nonetheless found that there was no evidence to support a violation of NRS 202.500. (*Id.*). Thus, given that the subject incident cannot establish statutory viciousness under NRS 202.500, and only one prior incident involving Max is in the record, Torres cannot prevail on her negligence per se theory.

### 2. General Negligence Theory

With respect to Torres's general negligence theory, Risley argues that he owed no duty of reasonable care to Torres. (Risley Mot. Summ. J. 8:2–6). Specifically, Risley argues that, under common law,[1] the owner of a dog is not liable for the vicious or dangerous acts of that dog unless the owner had prior knowledge of the vicious or dangerous propensities of the dog. (*Id.* 8:7–26). Risley contends that because his testimony regarding the prior bite incident is inadmissible hearsay, there is no evidence to establish his prior knowledge. (*Id.*). He further argues that, even if he did owe Torres a duty, he did not breach that duty because he (1) notified DGHC that he was bringing Max, and (2) placed a "do not enter" sign on his door. (*Id*. 9:1–13). Having presented evidence that negates an essential element of Torres's claim, Risley meets his initial burden.

However, the Court finds that Torres has met her burden of establishing a genuine dispute of fact for two reasons. First, as explained above, Risley's testimony regarding the prior incident with Max is admissible. Thus, as Torres argues, it can be used to establish Risley's prior knowledge of Max's dangerous propensities. (Torres Resp. 4:3-12).

---

[1] Risley correctly notes that, under NRS 1.030, the common law of England "shall be the rule of decision in all courts of" Nevada. Nev. Rev. Stat. 1.030.

Under Nevada law, a dog owner has a duty to anticipate harm posed by the dog and exercise reasonable care to prevent the harm. *McSwain v. United States*, No. 2:15-cv-01321-GMN-GWF, 2018 WL 3744014, at *2 (D. Nev. Aug. 6, 2018) (citing *Nichols v. Gallant*, No. A-12-667264-C, 2013 WL 7095982 (Nev. Dist. Ct. Nov. 5, 2013) (stating that an owner or keeper of a dog may be liable for its vicious or mischievous acts if the owner or keeper had prior knowledge of such propensities); *Drake v. Dean*, 19 Cal. Rptr. 2d 325 (1993) ("The common law [ ] provided that the owner of an animal which was not vicious ... but which was prone to some other potentially harmful behavior, could be held liable under a theory of negligence for any injury proximately caused by such behavior.")).  Here, a jury could find that Risley had knowledge of Max's propensity to bite based on the phone call with his roommate.  Thus, a reasonable jury could find that Risley owed Torres a duty to anticipate harm posed by Max and take reasonable steps to prevent that harm.

Second, Torres establishes the existence of a genuine dispute of material fact with respect to the breach element of her negligence theory.  Namely, Torres contests Risley's claim that he affixed a "do not enter" sign to his hotel room door when he left Max unattended, asserting that she did not see any such sign. (Torres Resp. 5:1–5 (citing Torres Dep. 106:6–16, Ex. 2 to Torres Resp.)).  Here, the parties present differing versions of the truth that must be resolved by the finder of fact at trial, not the summary judgment stage, especially considering that the element of breach is a question of fact for the jury. *Foster*, 291 P.3d at 153.  Accordingly, the Court finds that Torres has met her burden and DENIES Risley's Motion for Summary Judgment on this claim.

**B. Third Party Defendant DGHC's Motion for Summary Judgment**

Third Party-Defendant DGHC moves for summary judgment on Third-Party Plaintiff Risley's claims for contribution and equitable indemnification. (*See generally* DGHC Mot. Summ. J.).  DGHC argues that both claims are barred by the Nevada Industrial Insurance Act

("NIIA"), which provides worker's compensation benefits to employees who sustain injury within the course and scope of their employment. (*Id.* 7:13–27); Nev. Rev. Stat. 616A.020. Specifically, DGHC contends that, once worker's compensation benefits are paid, the NIIA precludes any other form of employer liability related to that same injury. (*Id.* 7:13–8:2).

The Nevada Supreme Court has explained that "*[a]bsent an independent duty owed to a third-party*, employers and co-employees are insulated by the provisions of the [NIIA] . . . not only from liability to employees, but also liability by way of indemnity to a third party." *Am. Fed. Sav. Bank v. Cnty. of Washoe*, 802 P.2d 1270, 1273 (Nev. 1990) (quoting *Kellen v. Second Jud. Dist. Ct. In & For Washoe Cnty., Dep't No. 6*, 642 P.2d 600, 600–01 (Nev. 1982)) (internal quotations omitted) (emphasis in original). The court went on to explain that the most common examples of such an independent duty are found in express and implied indemnity contracts between the employer and the third party. *Id.* at 1273–76. In *Nevada Power Co. v. Haggerty*, the Nevada Supreme Court identified another source of an independent duty between the employer and a third party: liability under a state statute which provides for indemnification. 989 P.2d 870, 873–77 (Nev. 1999). There, the plaintiff worked as a maintenance engineer for the Horseshoe Club Operating Company and suffered injuries from an electric shock caused by coming into contact with electrical wires in the building. *Id.* at 872–73. The plaintiff received damages in the form of worker's compensation, but also brought suit against the Nevada Power Company for his injuries. *Id.* The Nevada Power Company then sought indemnification against the Horseshoe Club; while the Nevada Supreme Court affirmed the lower court's dismissal of the case, it found that liability imposed under NRS 455.200 through 455.250 created an independent duty of indemnification between the Horseshoe Club and the Nevada Power Company. *Id.* at 877–80.

Here, DGHC concedes that an independent duty between themselves and Risley could be created by a finding that DGHC was liable under NRS 651.015, which governs civil liability

for innkeepers for death or injury of a person on the premises caused by a non-employee. (DGHC Mot. Summ. J. 15:4–8); Nev. Rev. Stat. 651.015. However, DGHC argues that the evidence in the record cannot establish its liability under that statute, and thus there is no independent duty that can support Risley's indemnification claim. (DGHC Mot. Summ. J. 15:14–16:15).

Under NRS 651.015, DGHC is not liable for the acts of a third-party unless: "(a) The wrongful act which caused the death or injury was foreseeable; and "(b) There is a preponderance of evidence that the owner or keeper did not exercise due care for the safety of the patron or other person on the premises." Nev. Rev. Stat. 651.015(1). Pursuant to the statute, "a wrongful act is not foreseeable unless: (a) The owner or keeper failed to exercise due care for the safety of the patron or other person on the premises; or (b) Prior incidents of similar wrongful acts occurred on the premises and the owner or keeper had notice or knowledge of those incidents." Nev. Rev. Stat. 651.015(3).

DGHC argues that it cannot be liable under NRS 651.015(1) because it took reasonable precautions to protect against harm to its employees caused by guests' dogs. (DGHC Mot. Summ. J. 15:14–25). Namely, DGHC points to the language in its Registration Card prohibiting leaving dogs "unattended in [a] room at any time," arguing that this explicit policy, which Risley assented to in signing the Registration Card, precludes a finding that DGHC failed to exercise due care. (*Id.*). Here, a reasonable jury could find that DGHC exercised due care based on the language in its Registration Card, and thus DGHC meets its initial burden of negating an essential element of Risley's claim.

The Court next considers whether Risley meets his burden of establishing a genuine dispute of material fact. The Court finds that he does not. In his Response, Risley argues first that DGHC is liable under NRS 651.015(1) because the harm suffered by Plaintiff was foreseeable and DGHC failed to act with due care or take reasonable precautions against the

foreseeable wrongful act. (Risley Resp. 6:5–11:9, ECF No. 48).  Second, Risley contends that the provision "[h]ousekeeping will not clean your room if your dog(s) is left in your room unattended" present in DGHC's Registration Card operates as an express contractual promise to Risley, which creates an independent duty between himself and DGHC. (*Id.* 11:11–12:4). The Court addresses each argument in turn.

First, while Risley does show that a reasonable juror could find DGHC liable under NRS 651.015, (*see id.* 10:15–11:9), the Court concludes that even if DGHC were liable under that statute, no independent duty would attach between Risley and DGHC.  Here, the difference between NRS 651.015 and the state statutes examined in *Haggerty* is stark.  There, the Nevada Supreme Court examined NRS 455.240, which provides:

> If an act constituting a violation of any provision of this chapter causes contact with an overhead line carrying high voltage, each person who committed the violation or caused another person to commit the violation shall pay the public utility operating the overhead line carrying high voltage for:
> 1. All damages to property of the public utility;
> 2. All reasonable costs and expenses incurred by the public utility as a result of the contact; and
> 3. *The costs and expenses incurred by the public utility as a result of the contact for damages to third persons.* Each person who committed a violation causing the contact or who caused another person to commit a violation causing the contact is jointly and severally liable for the payment required by this section.

989 P.2d at 874 (citing Nev. Rev. Stat. 455.240(3)) (emphasis in original).  That statute explicitly provides for indemnification of the power company by the employer who violates the statute.  No similar language is present in NRS 651.015.  The *Haggerty* court reasoned that, because NRS 455.240 was enacted after the NIIA, its explicit indemnification provision operated as a carve-out to the NIIA's prohibition on additional employer liability. *Id.* at 877. Here, given the lack of similarly explicit language in NRS 651.015, the Court cannot find that it was intended to displace the NIIA's limitation of employer liability.  Indeed, Risley makes no such argument, instead assuming that liability under NRS 651.015 is sufficient to create an

independent duty upon which Risley's indemnification claim can stand. (Risley Resp. 6:5–11:9).

Moreover, Risley fails to generate a genuine dispute of material fact with respect to the Registration Card's conferral of an independent duty.  Risley contends that the provision "[h]ousekeeping will not clean your room if your dog(s) is left in your room unattended" constitutes a contractual promise to Risley that DGHC breached when Plaintiff attempted to enter his room. (*Id.* 11:15–20).  However, as DGHC points out, the provision is a statement of DGHC's housekeeping policy, not a contractual promise to patrons, and further, it directly contradicts another provision in the Registration Card which provides: "Guests are responsible for any and all damages caused by your dog(s) during your stay." (DGHC Reply 6:15–7:17, ECF No. 53 (citing Registration Card at 2, Ex. E to DGHC Mot. Summ. J.)).

Under Nevada law, the interpretation of a contract is a question of law. *Redrock Valley Ranch, LLC v. Washoe Cnty.*, 254 P.3d 641, 647 (Nev. 2011).  Further, "[a] basic rule of contract interpretation is that '[e]very word must be given effect if at all possible.'" *Bielar v. Washoe Health Sys., Inc.*, 306 P.3d 360, 364 (Nev. 2013) (quoting *Musser v. Bank of Am.*, 964 P.2d 51, 54 (Nev. 1998)).  Here, accepting Risley's position that the Registration Card created an independent duty on the part of DGHC to indemnify him for damages caused by Max would render the later provision assigning responsibility for such damages to Risley meaningless. Thus, Risley's second attempt to create an independent duty also fails, and he accordingly fails to meet his burden under the summary judgment standard.  The Court therefore GRANTS DGHC's Motion for Summary Judgment on Risley's claims for contribution and equitable indemnification.

///

///

///

IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant Risley's Motion for Summary Judgment, (ECF No. 32), is **DENIED** with respect to Plaintiff Torres's general negligence theory.  Torres may not proceed on her negligence per se theory.

**IT IS FURTHER ORDERED** that Third Party-Defendant DGHC's Motion for Summary Judgment, (ECF No. 38), is **GRANTED**.


**DATED** this __27__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court